THE EAST ROME TOWN COMPANY *et al.*, plaintiffs in error, *vs.* GUSTAVUS W. NAGLE *et al.*, defendants in error.

1. The owners of a bridge, and of a franchise to use it as a public toll-bridge, having caused themselves to be incorporated as a land company to deal in real estate, and having brought the bridge in as a part of the capital stock, the corporation accepting the same, and using it, under the franchise, as a toll-bridge, a majority in number of such original corporators may, while *not owning stock enough in the corporation* to control the corporate conduct, but owning a minority of the shares, maintain a bill to enjoin the corporation from opening the bridge to the public as a free-bridge and ceasing to demand toll; the complainants making, by their bill, a case of injury to the revenues of the corporation and to the market value of the stock, and of consequent loss to themselves, as incident to separating the use of the bridge from the use of the franchise to take toll.

2. When the stockholders in a corporation are not numerous, and the minority complain by bill of the votes and motives of the majority, and of the corporate conduct consequent thereon, it is not improper that all the stockholders, as well as the corporation, be made parties.

3. When a demurrer for improper parties groups three of the defendants as within the same objection, and two of them are clearly proper, the third being doubtful, the demurrer should be overruled.

Equity. Parties. Corporations. Roads and Bridges. Before Judge UNDERWOOD. Floyd Superior Court. July Adjourned Term, 1876.

Nagle *et al.* filed their bill against the East Rome Town Company *et al.*, making, substantially, the following case:

On December 19th, 1872, complainants, Nagle, Smith, trustee, Adams, and defendant, Cothran, petitioned the superior court that they be incorporated under the name of " The East Rome Town Company," for the purpose of buying and selling real estate, and laying off and dividing the same into lots, streets, alleys, parks, etc., and for the purpose of building upon, improving, renting and leasing the same. The landed estate of said company then consisted of " that property adjacent to the city of Rome, known as the Long Farm," and a small strip of lot number 284 adjacent thereto; also, certain bridge property and privileges connecting the real estate with the city of Rome. At the January term, 1873, the proper order was granted incorporating petitioners, and they immediately commenced business under the charter.

These corporators had previously (to-wit : on December 3d, 1872) applied to the commissioners of roads and revenues of Floyd county, to have the bridge above referred to established and declared to be a public bridge, and prayed that the rates of toll and the amount of the bond required by law be fixed. The prayer of the petitioners was granted, and the order as to bond etc., complied with.

At the time the charter was granted, Nagle owned, and now owns, sixty-two shares of stock in said company; David Adams then owned one hundred and sixteen shares, and now owns ninety-seven shares ; Smith, trustee, then owned, and now owns —— shares; Cothran then owned —— shares, and afterwards acquired —— shares, so that he became the owner of two hundred and thirty-two shares; complainant, Branham, afterwards became the owner of thirty-four shares. The company was stocked at $50,000.00, consisting of five hundred shares at $100.00 per share, though the real cost of the property, including the bridge, was only about $——. Cothran has transferred his stock, either as collateral security, or in some other way, to the defendant, Brower. In June, 1876, Brower and Fouche

requested Adams to call a meeting of the stockholders of the East Rome Town Company. The call was made, and the meeting held on the 22d of that month. There were present at that meeting, Brower, representing his own stock and that of Fouche, Adams and Nagle. Thus representing a majority of the stock, Brower passed a resolution to declare said bridge free to the public after July 1st, 1876, during the pleasure of the company, by which was meant during the pleasure of Brower and Fouche, they having conceived the idea that those representing a majority of said stock had the right to give said bridge to the public, regardless of the interest of complainants in the same. Complainants insist that the bridge is a part of the property of the company, may be sold at a reasonable price, but cannot be given away without their consent.

The bill then proceeds to give, at length, the motives of Brower and Fouche, to charge confederation between them, and to ask discovery, all of which is immaterial here.

The prayer was that Brower and Fouche be restrained from opening said bridge to the public as free, that the complainants have general relief, and that the writ of subpœna issue to Brower, Fouche and Cothran.

Complainants, by an amendment, made the East Rome Town Co., as a corporation and as a bridge company, a party defendant, and charged substantially as follows:

All the stockholders of said company are parties to the bill, and there are no others except those named, unless the stock claimed by said Brower belongs to some other person. There is no board of directors and none authorized by the charter or by-laws. The East Rome property, including the bridge, cost about $26,000.00. The bridge, including the toll-house, cost $8,000.00 or $9,000.00. In the year 1875 the bridge produced a net income of about $1,000.00; such income is still steadily increasing. The company has expended $200.00 in improving the roads etc., to cause greater travel over the bridge.

The defendants demurred upon the following grounds:

1. Because there is no equity in the bill.

2. Because the complainants do not present such a case as entitles them to discovery.

3. Because the defendants, Brower, Cothran and Fouche, as individuals, are not proper parties to the bill.

The demurrer was overruled, and the defendants excepted.

DABNEY & FOUCHE; E. N. BROYLES, for plaintiffs in error.

C. ROWELL; WRIGHT & FEATHERSTON, for defendants.

BLECKLEY, Judge.

1. Where the owners of a bridge, and of a franchise to use it as a public toll-bridge, owned, also, certain lands in the neighborhood, and had themselves incorporated under the name of the East Rome Town Company, "for the purpose of buying and selling real estate, and laying off and dividing the same into lots, streets, alleys, parks etc., and for the purpose of building upon, improving, renting and leasing the same," the bridge went into the business, *prima facie*, as a toll-bridge, and not as a free-bridge. Those holding a majority of the stock in the corporation have no right, contrary to the will of a majority in number of the original corporators, to whom the bridge franchise was granted, to throw open the bridge to the public, make it a free-bridge, and thus diminish the revenues of the corporation, impair the value of the stock remaining in the hands of the complaining corporators, and make barren the bridge franchise for the time being. If the bridge franchise vested in the corporation by reason of the individuals to whom it was granted being afterwards incorporated, it is the duty of the corporation to use it in connection with the bridge, while it can be used profitably. If, on the contrary, the legal title to the franchise remained in the persons to whom it was granted, and only the legal title to the bridge is in

the corporation, even then the use of the two together would be necessary to carry out some of the purposes which seem to have been contemplated when the corporation was created. The corporation having, in fact, exercised the franchise, that is evidence that the franchise was intended to be preserved. Wherever the legal title to it may be, the equity of the case is, that the bridge and the franchise, for practical working, shall remain together. The corporation should either continue to use the franchise, or surrender the bridge to the complainants, so that they may use it; there being as little to indicate that, in making the bridge corporate property, there was an intention to destroy the franchise as that there was an intention to destroy the bridge.

2. 3. The bill is not demurrable because of the joinder of three individuals with the corporation as defendants, one of these being one of the original grantees of the bridge franchise, and one of the original corporators, and the other two being stockholders in the corporation who control a majority of the whole stock, and who are co-operating in wielding the power of the corporation. Where the stockholders in a corporation are not numerous, and the minority (in voting power) complain, by bill, of the votes and motives of the majority, and of the corporate conduct consequent thereon, it is not improper that all the stockholders be made parties. The original grantee and corporator above referred to, not now appearing on the books as a stockholder, but allowing his shares (if, in fact, he still owns any) to stand in the name of, and to be controlled by, one of the other defendants, the propriety of his being a party to the bill is doubtful. But as the other defendants are all proper parties, and the demurrer does not separate him from the other two individual defendants, but objects to all three alike, the demurrer for misjoinder of parties was properly overruled.

Judgment affirmed.